IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BOHANNON R. MILLER, | ) | CASE NO. 1:18CV770 |
| | ) | |
| Petitioner, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| WARDEN TOM SCHWEITZER, | ) | |
| | ) | **INTERIM** |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | |

Petitioner Bohannon R. Miller ("Petitioner" or "Miller") brings this habeas corpus action pursuant to 28 U.S.C. § 2254. Doc. 1. Miller is detained at the Toledo Correctional Institution, having been convicted by a Lorain County, Ohio, Court of Common Pleas jury of eleven counts, including murder, aggravated murder, felonious assault, tampering with evidence, and having weapons under a disability. Doc. 9-1, pp. 4-9, 12.[1] *State v. Miller*, Case No. 13CR086882 (Lorain Cty. Common Pleas Ct. filed February 13, 2014). The trial court merged the applicable counts and sentenced Miller to an aggregate prison sentence of 51 years to life. Doc. 9-1, pp. 13-14.

On March 22, 2018, Miller filed his petition for writ of habeas corpus setting forth two grounds for relief. Doc. 1, pp. 5-7. Respondent filed a Motion to Dismiss for failure to exhaust state court remedies (Doc. 9) and Miller filed a response (Doc. 10). This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to Local Rule 72.2. As set forth more fully below, Miller's petition is a mixed petition because one of his grounds is unexhausted. Thus, the undersigned recommends that he be permitted to file an

---
[1] Doc. page citations are to ECF Doc. page numbers.

1

amended petition dropping his unexhausted claim. If he fails to do so, his petition for writ of habeas corpus should be dismissed without prejudice.

## I. Background

### A. State trial court

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, the state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). The petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Railey v. Webb*, 540 F. 3d 393, 397 (6th Cir. 2008), *cert. denied*, 129 S. Ct. 2878 (2009). The Lorain County Court of Appeals, Ninth Appellate District of Ohio, set forth the facts as follows:

> {¶ 2} The Lorain County Grand Jury indicted Miller on a variety of offenses including aggravated murder in violation of R.C. 2903.01(A), an unspecified felony, and attempted murder in violation of R.C. 2903.02(A), 2923.02(A), a felony of the first degree, as well as several firearm specifications in violation of R.C. 2941.145, 2941.146. The charges arose from a June 2009 incident that occurred at the corner of Long Avenue and 13th Street in Lorain, Ohio. At approximately 10:00 p.m., a vehicle drove through the area and its occupants opened fire, shooting two individuals, C.R. and M.M. C.R. sustained two non-fatal injuries after being shot once in the leg and once in the side. However, M.M. sustained fatal gunshots to his chest and later died from his injuries. Police were already present in the area to investigate a separate murder and they quickly responded to the scene. They learned from witnesses that the suspect's vehicle was a gold or silver Taurus and that the shooter stood through the sunroof while shooting at C.R. and M.M.
>
> {¶ 3} After learning this, police received a dispatch that someone had called to report suspicious activity at the intersection of 30th Street and Caroline Avenue, where four males were seen exiting a vehicle and wiping it down. Police responded to this location and found a gold Taurus that matched the witnesses' description of the shooter's vehicle. The Taurus's sunroof was open and police discovered a spent cartridge in the vehicle. BCI matched this cartridge to cartridges discovered at the scene of the shooting. Police also linked the gold Taurus to Miller and conducted a follow-up investigation.
>
> {¶ 4} During the course of this subsequent investigation, Lorain Police Detective Ernest Sivert interviewed R.F. In his first interview, R.F. said that he was not present during the shooting and had no knowledge of the shooter's identity. However, in his second police interview, R.F. said that he was seated in the backseat of the Taurus at the time of the shooting. And, R.F. stated that Miller was one of the vehicle's other occupants and that Miller was the person who shot toward C.R. and M.M. R.F. was not entirely clear in his

2

description of Miller's actions except that he stood and shot toward the victims out of the vehicle's passenger side. R.F. also confirmed that after the incident, all four of the vehicle's occupants wiped the vehicle down and left it at the intersection of 30th Street and Caroline Avenue. The State entered into an agreement with R.F. whereby he agreed to testify regarding Miller's actions during the June 2009 incident in exchange for immunity in the incident.

{¶ 5} The matter proceeded to a jury trial. During the pendency of the trial, R.F. indicated that he would not testify as required under the agreement. Subsequently the State filed a notice under Evid.R. 804(B)(6) that it intended to introduce evidence regarding R.F.'s out-of-court statements. The trial court conducted an evidentiary hearing outside the presence of the jury to address the issue. At the hearing, Detective Sivert testified that after the trial started, he met with R.F., who was in county jail along with Miller pending the resolution of their respective court cases. R.F. indicated that during one interaction over a glass partition at the jail, Miller held a document up to the glass and told him that he was the only person who could "sink" Miller. Miller also said the names of R.F.'s nieces, which R.F. interpreted as a threat. Detective Sivert authenticated two jail surveillance videos and testified that they confirmed that R.F. and Miller interacted over the glass partition. However, the video contained no audio of the interaction.

{¶ 6} According to Jail Administrator Andy Laubenthal, R.F. requested administrative segregation. The basis for R.F.'s request was that he was fearful for his life after receiving threats and experiencing several incidents of misbehavior directed toward him, including an incident in which another inmate threw urine into his jail cell. Administrator Laubenthal granted the request and R.F. was put into protective custody away from other inmates in the county jail.

{¶ 7} Chief Assistant Prosecutor Tony Cillo testified that he learned of R.F.'s decision to no longer cooperate and consequently discussed with him the ramifications of that decision for his plea agreement. During the course of that discussion, R.F. told Mr. Cillo that a prison gang attacked him several times in the jail because he would be "snitching" against Miller, one of the gang's associates. R.F. also repeated the threat that Miller made against his nieces over the glass partition and the fear that he had both for his own life and the lives of his family members.

{¶ 8} The trial court called R.F. to testify at the hearing. He relevantly testified as follows:

> The Court: * * * [H]ave you been threatened regarding coming to court and testifying in this case?
>
> The Witness: Yes.
>
> The Court: Are you in fear because of these threats. The Witness: Yes.
>
> The Court: You take the threats seriously?

3

>     The Witness: Right. That's why I don't want to testify.
>
>     * * *
>
>     The Court: * * * Have you been threatened by either Bohannon Miller or people who you believe have reason to believe are doing the work of Bohannon Miller, or doing, or making the threat on behalf of Bohannon Miller [?]
>
>     The Witness: Yes.
>
> After hearing the testimony, the trial court found that the State met its burden to show that Miller engaged in wrongdoing by threatening R.F. for the purpose of making him unavailable to testify.
>
> {¶ 9} Detective Sivert subsequently testified during the trial to R.F.'s out-of-court statements regarding the shooting. Additionally, the trial court admitted the recording of R.F.'s second police interview into evidence.[1] The jury then found Miller guilty of all counts alleged in the indictment and the trial court sentenced him to a total prison term of 51 years to life. Miller filed this timely appeal, which presents one assignment of error for our review.
>
>     [FN1] The trial court also admitted the video of the first police interview into evidence.

*State v. Miller*, 2016 WL 3881187, at *1-3 (Oh. Ct. App. July 18, 2016).

## B. Direct Appeal

On March 7, 2014, Miller, through new counsel, appealed to the Ohio Ninth District Court of Appeals, Lorain County. Doc. 9-1, p. 18. In his brief filed on August 10, 2015, Miller raised the following assignment of error:

> 1. The trial court abused its discretion in admitting, over the objection of defense counsel, hearsay testimony by a detective in violation of the Sixth and Fourteenth Amendment of the United States Constitution.

Doc. 9-1, p. 24. On July 18, 2016, the Ohio Court of Appeals affirmed the judgment of the trial court. Doc. 9-1, pp. 84-94.

On August 29, 2016, Miller, pro se, appealed to the Ohio Supreme Court. Doc. 9-1, p. 95. In his memorandum in support of jurisdiction, he raised the following proposition of law:

> I. The trial court abused its discretion admitting, over the objection of defense counsel, hearsay testimony in violation of the Sixth and Fourteenth Amendments to the United States Constitution.

Doc. 9-1, p. 101. On December 28, 2016, the Ohio Supreme Court declined to accept jurisdiction of the appeal pursuant to S.Ct.Prac.R. 7.08(B)(4). Doc. 9-1, p. 146.

### C. Motion for New Trial

On August 8, 2016, Miller, pro se, filed a motion for leave to file a motion for a new trial. Doc. 9-1, p. 147. In support of his motion, he attached an affidavit from an individual named Rayshaun Powell, who averred that he was in the Lorain County Jail with R.F. and another man, Brady Phillips, in 2011; that Phillips told him that R.F. said that when R.F. got out of prison he was going to kill Phillip's wife and blame it on Miller; and that R.F., after being punched by other inmates for the murder of "'Young Snap' 'Thorpe'" yelled, "Yeah, I killed that bitch nigga." Doc. 9-1, p. 151.

On December 13, 2016, the trial court denied Miller's motion, finding that he had not demonstrated why he was unavoidably delayed from discovering this new evidence and that the evidence was immaterial. Doc. 9-1, pp. 166-168.

Miller did not appeal.

### D. Federal Habeas Petition

On March 22, 2018, Miller, pro se, filed a petition for a writ of habeas corpus. Doc. 1. He listed the following grounds for relief:

> **Ground One:** The decisions of the Ohio judiciary denying the Petitioner relief upon his claim of violation of his Confrontation Clause rights were contrary to clearly established federal law, as the Petitioner's rights as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution were violated.
> **Supporting facts**: Herein, R.F's statement was admitted absent the crucible of cross-examination. During the course of the investigation, Lorain Police Detective Ernest Sivert interviewed R.F. In his first interview, R.F. said that he was not present during the shooting and had no knowledge of the shooter's identity. However, in his second police interview, R.F. said that he was seated in the backseat of the Taurus at the time of the shooting. R.F. stated that the Petitioner was one of the vehicle's other occupants and that

5

the Petitioner was the person who shot toward C.R. and M.M. R.F. was not entirely clear in his description of the Petitioner's actions except that he stood and shot toward the victims out of the vehicle's passenger side. R.F. also confirmed that after the incident, all four of the vehicle's occupants wiped the vehicle down and left it at the intersection of 30th Street and Caroline Avenue. The State entered into an agreement with R.F. whereby he agreed to testify regarding the Petitioner's actions during the June 2009 incident in exchange for immunity in the incident. During trial, R.F. indicated that he would not testify as required under the agreement. Subsequently the State filed a notice under Evid.R. 804(B)(6) that it intended to introduce evidence regarding R.F.s out-of-court statements. (See Accompanying Petition and Memorandum in Support of Petition for Writ of Habeas Corpus).

**Ground Two**: The Petitioner's right to due process of law as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution continues to be violated as the evidence of guilt does not rise to a level beyond a reasonable doubt, as demonstrated by newly discovered evidence.
   **Supporting facts**: The Petitioner was convicted of committing a murder. During the course of this subsequent investigation, Lorain Police Detective Ernest Sivert interviewed R.F. [] In his first interview, R.F. said that he was not present during the shooting and had no knowledge of the shooter's identity. However, in his second police interview, R.F. said that he was seated in the backseat of the Taurus at the time of the shooting. R.F. stated that the Petitioner was one of the vehicle's other occupants and that the Petitioner was the person who shot toward C.R. and M.M. R.F. was not entirely clear in his description of the Petitioner's actions except that he stood and shot toward the victims out of the vehicle's passenger side. R.F. also confirmed that after the incident, all four of the vehicle's occupants wiped the vehicle down and left it at the intersection of 30th Street and Caroline Avenue. The State entered into an agreement with R.F. whereby he agreed to testify regarding the Petitioner's actions during the June 2009 incident in exchange for immunity in the incident. Brady Phillips has come forward, in September 2017, to provide new information regarding this case. Phillips stated that [R.F.] informed him that [R.F.] was the shooter. (See Accompanying Petition and Memorandum In Support of Petition for a Writ of Habeas Corpus.).

Doc. 1, pp. 5-7.

On September 11, 2018, Respondent filed a Motion to Dismiss, arguing that Miller's Petition is a mixed petition because Ground 2 is unexhausted, and that, therefore, his Petition should be dismissed without prejudice. Doc. 9. Miller filed a response. Doc. 10.

### III. Legal Standard

A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A). A state defendant with federal

constitutional claims must fairly present those claims to the state courts before raising them in a federal habeas corpus action. 28 U.S.C. § 2254(b), (c); *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)) ("[f]ederal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts"). A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). In order to satisfy the fair presentation requirement, a habeas petitioner must present both the factual and legal underpinnings of his claims to the state courts. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).

A "mixed" petition for habeas corpus relief is one in which a habeas petition contains some claims that have been exhausted in the state courts and some that have not. *See Rhines v. Weber*, 544 U.S. 269, 271 (2005). When a court is presented with a mixed petition, the entire petition may be dismissed without prejudice, *Rose v. Lundy*, 455 U.S. 509, 510 (1982), or, under certain limited circumstances, a court may grant a stay to allow the petitioner to return to state court to exhaust his state remedies, *Rhines*, 544 U.S. at 277. A "stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court." *Id*. Even if "good cause" is shown, before granting a stay a court must consider whether the unexhausted claims are potentially meritorious and whether the petitioner did not engage in dilatory litigation tactics. *Id*. at 277-278.

**IV. Analysis**

Miller agrees that he never presented Ground 2 to the state courts. Doc. 10, p. 2. Accordingly, there is no dispute that his Petition is a mixed petition because it contains an exhausted and unexhausted claim.

Miller does not allege, let alone demonstrate, good cause for failing to exhaust his claim in state court. The record shows that in July 2016, Miller knew Phillips had information about things R.F. said while Phillips and R.F. were cell mates in 2011. Doc. 9-1, p. 151. And despite having Phillips' affidavit in September 2017, Miller did not file anything in state court regarding this claim based on Phillips' affidavit. Instead, he waited six months and then raised it for the first time in this court when he filed his federal habeas petition.[2] In other words, Miller did not even attempt to raise this claim with his new evidence in state court. *See Carter v. Mitchell*, 829 F.3d 455, 467 (6th Cir. 2016) (a stay and abeyance under *Rhines* does not encompass "unexhausted evidence" and may not be used "as an end-run around [*Cullen v.*] *Pinholster*[.]").

Miller argues that any potential claim he could have raised in state court is not available to him because of the one-year filing deadline for post-conviction actions. Doc. 10, p. 2. But Ohio R.C. 2953.23 provides a mechanism for filing a delayed post-conviction petition. Thus, Miller has not shown good cause for failing to exhaust Ground 2 and he is not entitled to a stay and abeyance. *See Rhines*, 544 U.S. at 277.

When a stay and abeyance is inappropriate, as is here, a federal district court should give the petitioner an opportunity to file an amended petition without the unexhausted claims. *See Rhines*, 544 U.S. at 278 ("if a petitioner presents a district court with a mixed petition and the court determines that stay and abeyance is inappropriate, the court should allow the petitioner to delete the unexhausted claims and to proceed with the exhausted claims if dismissal of the entire petition would unreasonably impair the petitioner's right to obtain federal relief."). Accordingly,

---

[2] Moreover, Miller never appealed the trial court's ruling on his motion for new trial based on another affidavit with similar claims.

the undersigned recommends that Miller be permitted to file an amended petition without his unexhausted claim, Ground 2. If Miller fails to file an amended petition, his entire petition should be dismissed without prejudice.

## IV. Conclusion and Recommendation

For the reasons stated above, the undersigned recommends that Respondent's Motion to Dismiss (Doc. 9) be granted in part; Miller should be afforded an opportunity to file an amended petition deleting his unexhausted ground, Ground 2. If Miller does not file an amended petition deleting Ground 2, Respondent's Motion should be granted as requested and Miller's entire petition should be dismissed without prejudice.

Dated: December 28, 2018

*/s/ Kathleen B. Burke*
Kathleen B. Burke
United States Magistrate Judge

## **OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); s*ee also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).