IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BOHANNON R. MILLER, | ) | CASE NO. 1:18CV770 |
| | ) | |
| Petitioner, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| WARDEN TOM SCHWEITZER, | ) | |
| | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | |

Petitioner Bohannon R. Miller ("Petitioner" or "Miller") brings this habeas corpus action pursuant to 28 U.S.C. § 2254.  Doc. 1.  Miller is detained at the Toledo Correctional Institution, having been convicted by a Lorain County, Ohio, Court of Common Pleas jury of eleven counts, including murder, aggravated murder, felonious assault, tampering with evidence, and having weapons under a disability.  Doc. 9-1, pp. 4-9, 12.[1]  *State v. Miller*, Case No. 13CR086882 (Lorain Cty. Common Pleas Ct. filed February 13, 2014).  The trial court merged the applicable counts and sentenced Miller to an aggregate prison sentence of 51 years to life.  Doc. 9-1, pp. 13-14.

On February 13, 2019, Miller filed an Amended Petition for writ of habeas corpus setting forth one ground for relief.  Doc. 1, pp. 5-7.  Respondent filed a Return of Writ.  Doc. 14.  Miller has not filed a response and the time to do so has passed.  This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to Local Rule 72.2.  As set forth more fully below, Miller's sole ground for relief fails on the merits.  Thus, the undersigned recommends that Miller's Amended Petition be DENIED.

---

[1] Doc. page citations are to ECF Doc. page numbers.

1

# I.  Background

**A. State trial court**

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, the state court's factual findings are presumed correct.  28 U.S.C. § 2254(e)(1). The petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Railey v. Webb*, 540 F. 3d 393, 397 (6th Cir. 2008), *cert. denied*, 129 S. Ct. 2878 (2009).  The Lorain County Court of Appeals, Ninth Appellate District of Ohio, set forth the facts as follows:

> {¶ 2} The Lorain County Grand Jury indicted Miller on a variety of offenses including aggravated murder in violation of R.C. 2903.01(A), an unspecified felony, and attempted murder in violation of R.C. 2903.02(A), 2923.02(A), a felony of the first degree, as well as several firearm specifications in violation of R.C. 2941.145, 2941.146. The charges arose from a June 2009 incident that occurred at the corner of Long Avenue and 13th Street in Lorain, Ohio. At approximately 10:00 p.m., a vehicle drove through the area and its occupants opened fire, shooting two individuals, C.R. and M.M. C.R. sustained two non-fatal injuries after being shot once in the leg and once in the side. However, M.M. sustained fatal gunshots to his chest and later died from his injuries. Police were already present in the area to investigate a separate murder and they quickly responded to the scene. They learned from witnesses that the suspect's vehicle was a gold or silver Taurus and that the shooter stood through the sunroof while shooting at C.R. and M.M.

> {¶ 3} After learning this, police received a dispatch that someone had called to report suspicious activity at the intersection of 30th Street and Caroline Avenue, where four males were seen exiting a vehicle and wiping it down. Police responded to this location and found a gold Taurus that matched the witnesses' description of the shooter's vehicle. The Taurus's sunroof was open and police discovered a spent cartridge in the vehicle. BCI matched this cartridge to cartridges discovered at the scene of the shooting. Police also linked the gold Taurus to Miller and conducted a follow-up investigation.

> {¶ 4} During the course of this subsequent investigation, Lorain Police Detective Ernest Sivert interviewed R.F. In his first interview, R.F. said that he was not present during the shooting and had no knowledge of the shooter's identity. However, in his second police interview, R.F. said that he was seated in the backseat of the Taurus at the time of the shooting. And, R.F. stated that Miller was one of the vehicle's other occupants and that Miller was the person who shot toward C.R. and M.M. R.F. was not entirely clear in his description of Miller's actions except that he stood and shot toward the victims out of the vehicle's passenger side. R.F. also confirmed that after the incident, all four of the vehicle's occupants wiped the vehicle down and left it at the intersection of 30th Street and Caroline Avenue. The State entered into an agreement with R.F. whereby he agreed

2

to testify regarding Miller's actions during the June 2009 incident in exchange for immunity in the incident.

{¶ 5} The matter proceeded to a jury trial. During the pendency of the trial, R.F. indicated that he would not testify as required under the agreement. Subsequently the State filed a notice under Evid.R. 804(B)(6) that it intended to introduce evidence regarding R.F.'s out-of-court statements. The trial court conducted an evidentiary hearing outside the presence of the jury to address the issue. At the hearing, Detective Sivert testified that after the trial started, he met with R.F., who was in county jail along with Miller pending the resolution of their respective court cases. R.F. indicated that during one interaction over a glass partition at the jail, Miller held a document up to the glass and told him that he was the only person who could "sink" Miller. Miller also said the names of R.F.'s nieces, which R.F. interpreted as a threat. Detective Sivert authenticated two jail surveillance videos and testified that they confirmed that R.F. and Miller interacted over the glass partition. However, the video contained no audio of the interaction.

{¶ 6} According to Jail Administrator Andy Laubenthal, R.F. requested administrative segregation. The basis for R.F.'s request was that he was fearful for his life after receiving threats and experiencing several incidents of misbehavior directed toward him, including an incident in which another inmate threw urine into his jail cell. Administrator Laubenthal granted the request and R.F. was put into protective custody away from other inmates in the county jail.

{¶ 7} Chief Assistant Prosecutor Tony Cillo testified that he learned of R.F.'s decision to no longer cooperate and consequently discussed with him the ramifications of that decision for his plea agreement. During the course of that discussion, R.F. told Mr. Cillo that a prison gang attacked him several times in the jail because he would be "snitching" against Miller, one of the gang's associates. R.F. also repeated the threat that Miller made against his nieces over the glass partition and the fear that he had both for his own life and the lives of his family members.

{¶ 8} The trial court called R.F. to testify at the hearing. He relevantly testified as follows:

> The Court: * * * [H]ave you been threatened regarding coming to court and testifying in this case?
>
> The Witness: Yes.
>
> The Court: Are you in fear because of these threats. The Witness: Yes.
>
> The Court: You take the threats seriously?
>
> The Witness: Right. That's why I don't want to testify.
>
> * * *

3

> The Court: * * * Have you been threatened by either Bohannon Miller or people who you believe have reason to believe are doing the work of Bohannon Miller, or doing, or making the threat on behalf of Bohannon Miller [?]
>
> The Witness: Yes.
>
> After hearing the testimony, the trial court found that the State met its burden to show that Miller engaged in wrongdoing by threatening R.F. for the purpose of making him unavailable to testify.
>
> {¶ 9} Detective Sivert subsequently testified during the trial to R.F.'s out-of-court statements regarding the shooting. Additionally, the trial court admitted the recording of R.F.'s second police interview into evidence.[1] The jury then found Miller guilty of all counts alleged in the indictment and the trial court sentenced him to a total prison term of 51 years to life. Miller filed this timely appeal, which presents one assignment of error for our review.
>
>> [FN1] The trial court also admitted the video of the first police interview into evidence.

*State v. Miller*, 2016 WL 3881187, at *1-3 (Oh. Ct. App. July 18, 2016).

## B. Direct Appeal

On March 7, 2014, Miller, through new counsel, appealed to the Ohio Ninth District Court of Appeals, Lorain County. Doc. 9-1, p. 18. In his brief filed on August 10, 2015, Miller raised the following assignment of error:

> 1. The trial court abused its discretion in admitting, over the objection of defense counsel, hearsay testimony by a detective in violation of the Sixth and Fourteenth Amendment of the United States Constitution.

Doc. 9-1, p. 24. On July 18, 2016, the Ohio Court of Appeals affirmed the judgment of the trial court. Doc. 9-1, pp. 84-94.

On August 29, 2016, Miller, pro se, appealed to the Ohio Supreme Court. Doc. 9-1, p. 95. In his memorandum in support of jurisdiction, he raised the following proposition of law:

> I. The trial court abused its discretion admitting, over the objection of defense counsel, hearsay testimony in violation of the Sixth and Fourteenth Amendments to the United States Constitution.

4

Doc. 9-1, p. 101. On December 28, 2016, the Ohio Supreme Court declined to accept jurisdiction of the appeal pursuant to S.Ct.Prac.R. 7.08(B)(4). Doc. 9-1, p. 146.

### C. Motion for New Trial

On August 8, 2016, Miller, pro se, filed a motion for leave to file a motion for a new trial. Doc. 9-1, p. 147. In support of his motion, he attached an affidavit from an individual named Rayshaun Powell, who averred that he was in the Lorain County Jail with R.F. and another man, Brady Phillips, in 2011; that Phillips told him that R.F. said that when R.F. got out of prison he was going to kill Phillip's wife and blame it on Miller; and that R.F., after being punched by other inmates for the murder of "'Young Snap' 'Thorpe'" yelled, "Yeah, I killed that bitch nigga." Doc. 9-1, p. 151.

On December 13, 2016, the trial court denied Miller's motion, finding that he had not demonstrated why he was unavoidably delayed from discovering this new evidence and that the evidence was immaterial. Doc. 9-1, pp. 166-168.

Miller did not appeal.

### D. Federal Habeas Petition

On March 22, 2018, Miller, pro se, filed a petition for a writ of habeas corpus. Doc. 1. He listed the following grounds for relief:

> **Ground One:** The decisions of the Ohio judiciary denying the Petitioner relief upon his claim of violation of his Confrontation Clause rights were contrary to clearly established federal law, as the Petitioner's rights as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution were violated.
> **Supporting facts**: Herein, R.F's statement was admitted absent the crucible of cross-examination. During the course of the investigation, Lorain Police Detective Ernest Sivert interviewed R.F. In his first interview, R.F. said that he was not present during the shooting and had no knowledge of the shooter's identity. However, in his second police interview, R.F. said that he was seated in the backseat of the Taurus at the time of the shooting. R.F. stated that the Petitioner was one of the vehicle's other occupants and that the Petitioner was the person who shot toward C.R. and M.M. R.F. was not entirely clear in his description of the Petitioner's actions except that he stood and shot toward the victims out of the vehicle's passenger side. R.F. also confirmed that after the incident, all

5

>four of the vehicle's occupants wiped the vehicle down and left it at the intersection of 30th Street and Caroline Avenue. The State entered into an agreement with R.F. whereby he agreed to testify regarding the Petitioner's actions during the June 2009 incident in exchange for immunity in the incident. During trial, R.F. indicated that he would not testify as required under the agreement. Subsequently the State filed a notice under Evid.R. 804(B)(6) that it intended to introduce evidence regarding R.F.s out-of-court statements. (See Accompanying Petition and Memorandum in Support of Petition for Writ of Habeas Corpus).
>
>**Ground Two**: The Petitioner's right to due process of law as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution continues to be violated as the evidence of guilt does not rise to a level beyond a reasonable doubt, as demonstrated by newly discovered evidence.
>**Supporting facts**: The Petitioner was convicted of committing a murder. During the course of this subsequent investigation, Lorain Police Detective Ernest Sivert interviewed R.F. [] In his first interview, R.F. said that he was not present during the shooting and had no knowledge of the shooter's identity. However, in his second police interview, R.F. said that he was seated in the backseat of the Taurus at the time of the shooting. R.F. stated that the Petitioner was one of the vehicle's other occupants and that the Petitioner was the person who shot toward C.R. and M.M. R.F. was not entirely clear in his description of the Petitioner's actions except that he stood and shot toward the victims out of the vehicle's passenger side. R.F. also confirmed that after the incident, all four of the vehicle's occupants wiped the vehicle down and left it at the intersection of 30th Street and Caroline Avenue. The State entered into an agreement with R.F. whereby he agreed to testify regarding the Petitioner's actions during the June 2009 incident in exchange for immunity in the incident. Brady Phillips has come forward, in September 2017, to provide new information regarding this case. Phillips stated that [R.F.] informed him that [R.F.] was the shooter. (See Accompanying Petition and Memorandum In Support of Petition for a Writ of Habeas Corpus.).

Doc. 1, pp. 5-7.

On September 11, 2018, Respondent filed a Motion to Dismiss, arguing that Miller's Petition is a mixed petition because Ground 2 is unexhausted, and that, therefore, his Petition should be dismissed without prejudice. Doc. 9. Miller filed a response, conceding that Ground 2 is unexhausted. Doc. 10. The Court found that Miller did not establish good cause for failing to exhaust Ground 2 in state court and, as a result, ordered him to file an amended petition deleting Ground 2. Doc. 11, pp. 8-9; Doc. 12.

### E. Amended Federal Habeas Petition

6

On February 13, 2019, Miller, pro se, filed an Amended Petition for a writ of habeas corpus, asserting Ground 1, detailed above. Doc. 13, p. 11. Respondent filed a Return of Writ. Doc. 14. Miller has not filed a response and the time to do so has passed.

## II. Standard of Review under AEDPA

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a petitioner must meet certain procedural requirements in order to have his claims reviewed in federal court. *Smith v. Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 430 (6th Cir. 2006). In order to obtain habeas relief under 28 U.S.C. § 2254, a petitioner must show either that the state court decision (1) resulted in a decision contrary to, or involving an unreasonable application of, clearly established federal law as determined by the United States Supreme Court ("contrary to" clause); or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings ("unreasonable application" clause). 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant a writ if the state court arrives at a conclusion opposite to that reached by the [United States Supreme] Court on a question of law or [based on] a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000). Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. "Clearly established federal law" refers to the holdings, not dicta, of the Supreme Court's decisions as of the time of the relevant state court decision, as well as legal principals and standards flowing from Supreme Court precedent. *Id*. at 412; *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005). A state court is not required to cite Supreme Court precedent or reflect an awareness of Supreme Court cases, "so long as neither the reasoning nor the result of

7

the state-court decision contradicts" such precedent.  *Early v. Packer*, 537 U.S. 3, 8 (2002); *Lopez v. Wilson*, 426 F.3d 339, 358 (6th Cir. 2005).  If the Supreme Court has not addressed the petitioner's specific claims, a reviewing district court cannot find that a state court acted contrary to, or unreasonably applied, Supreme Court precedent or clearly established federal law.  *Carey v. Musladin*, 549 U.S. 70, 77 (2006).

In determining whether the state court's decision involved an unreasonable application of law, the court employs an objective standard.  *Williams*, 529 U.S. at 409.  "A state court's determination that a claim lacks merit precludes federal habeas review so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision."  *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also Bray v. Andrews*, 640 F.3d 731, 738 (6th Cir. 2011).  "A state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement."  *Harrington*, 562 U.S. at 103.

### III. Analysis

**A. Ground 1 fails on the merits**

Miller argues that his Confrontation Clause rights were violated when the trial court permitted R.F.'s out-of-court statements to be introduced at trial.  Doc. 13, p. 13.  The Sixth Amendment's Confrontation Clause provides, "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him."  U.S. CONST. Amend. VI.  A witness's testimony is inadmissible unless the witness appears at trial or, if the witness is unavailable, the defendant had a prior opportunity for cross-examination.  *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 309 (2009) (citing *Crawford v. Washington*, 541 U.S. 36, 54 (2004)).  However, "one who obtains the absence of a witness by wrongdoing forfeits the

8

constitutional right to confrontation." *Davis v. Washington*, 547 U.S. 813, 833 (2006). The forfeiture-by-wrongdoing rule applies "only when the defendant engaged in conduct designed to prevent the witness from testifying." *Giles v. California*, 554 U.S. 353, 359 (2008).

The Ohio Court of Appeals considered Miller's claim that R.F.'s out-of-court statements violated Ohio Evid. Rule 804 and the Confrontation Clause as follows:

> {¶ 14} Miller focuses his hearsay-based arguments on two points: (1) the trial court could not find that he engaged in wrongdoing unless the State offered evidence that he killed or seriously injured R.F.; and (2) the trial court should have rejected the State's request to admit the out-of-court statements because the evidence of his threats was "general" and "without any verification." We reject Miller's argument on both points.
>
> {¶ 15} As to Miller's first point, a review of the staff notes to Evid.R. 804(B)(6) as well as Ohio case law reveals that the rule is intended to cover more situations than simply those that implicate the murder or serious assault of the declarant. The 2001 Staff Note to Evid.R. 804(B)(6) states that "the wrongdoing need not consist of a criminal act." It also provides that "[e]ncouraging a witness to leave the state is wrongdoing in this context because no person has the legal right to refuse to provide testimony in the absence of a privilege or other rule of evidence." *Id*. This commentary plainly contemplates that Evid.R. 804(B) covers a variety of wrongdoing beyond the murder or physical assault of the declarant.
>
> {¶ 16} Miller correctly points out that, despite this commentary, the majority of Ohio cases applying Evid.R. 804(B)(6) relate to the defendant's wrongdoing in the form of murdering the declarant. But, there are instances in which Ohio courts have affirmed the admission of a declarant's statements after the defendant merely threatened the declarant and took no physical action. *See State v. Davis*, 6th Dist. Lucas No. L–14–1274, 2015–Ohio–5159, ¶ 18–20 (holding that testimony regarding unavailable declarant's statement was admissible where the defendant told declarant that "[e]verybody play their part, everybody going to be happy," which made the declarant fear for her life and her family's safety); *State v. Blackford*, 5th Dist. Stark No.2014CA00050, 2014–Ohio–4808, ¶ 23 (holding that testimony regarding unavailable declarant's statements were admissible because jailhouse phone call recording showed the defendant's "numerous antics to get [the declarant] not to appear for trial but also to persuade [another witness] not to appear for trial"). This Ohio authority is consistent with the federal courts' application of the similar forfeiture-by-wrongdoing provision contained in Fed.R.Evid. 804(B)(6). *See United States v. Scott*, 284 F.3d 758, 764 (7th Cir.2002) ("We think that applying pressure on a potential witness not to testify, including by threats of harm or suggestions of future retribution, is wrongdoing."); *United States v. Dhinsa*, 243 F.3d 635, 651–652 (2d Cir.2001) ("[T]his Court, as well as a majority of our sister circuits, have also applied the waiver-by-misconduct rule in cases where the defendant has wrongfully procured the witnesses' silence through threats, actual violence or murder."). In light of this authority, we must reject Miller's argument that evidence of mere threats is insufficient to support a

9

> trial court's finding that the defendant engaged in wrongdoing for the purpose of making a witness unavailable for trial.
>
> {¶ 17} We likewise reject Miller's argument that the State offered unverified evidence to support its contention that Miller threatened R.F. The record reflects that the State did offer evidence that corroborated R.F.'s allegation that Miller threatened him over the trial. For instance, the State offered a surveillance recording that showed R.F. and Miller interacting at a glass partition in the county jail, which corroborates R.F.'s statements that Miller threatened him at the partition. And, R.F.'s fear for his own safety appears to have been genuine since he requested and received administrative segregation in the county jail after the glass partition incident. Most importantly, R.F. himself testified that he was threatened by either Miller or individuals acting on Miller's behalf.
>
> {¶ 18} The trial judge heard R.F.'s testimony as well as all of the other evidence regarding the veracity of Miller's threats and their resulting effect on R.F. After hearing this evidence, the trial judge concluded that the State proved both prongs of the Evid.R. 804(B)(6) test. We must defer to the trial judge's credibility determinations and consideration of the weight of the evidence. *See State v. Mills*, 62 Ohio St.3d 357, 366 (1992) ("[T]he evaluation of evidence and the credibility of witnesses are issues for the trier of fact."). We can discern no basis in the record to conclude that the trial judge abused his discretion in deciding that R.F.'s version of events was credible and demonstrated wrongdoing on Miller's part for the purpose of preventing R.F. from testifying at trial. As a result, we conclude that the trial court did not abuse its discretion in deciding that R.F.'s out-of-court statements were admissible under Evid.R. 804(B)(6).

*Miller*, 2016 WL 3881187, at *4-5. With respect to Miller's Confrontation Clause challenge, the

Ohio Court of Appeals explained,

> {¶ 19} We review a trial court's admission of evidence over a Confrontation Clause objection de novo. *State v. Person*, 9th Dist. Summit No. 27600, 2016–Ohio–681, ¶ 20. The Confrontation Clause guarantees a criminal defendant the right "to be confronted with the witnesses against him." Sixth Amendment to the United States Constitution. This right under the federal Constitution is applicable to the States via the Fourteenth Amendment. *See Pointer v. Texas*, 380 U.S. 400, 403 (1965). The import of this protection is that it "requires, wherever possible, testimony and cross-examination to occur at trial." *State v. Myers*, 9th Dist. Summit No. 25737, 2012–Ohio–1820, ¶ 21. Although a criminal defendant's confrontation right is rooted deeply in history, *see Crawford v. Washington*, 541 U.S. 36, 43 (2004) ("The right to confront one's accusers is a concept that dates back to Roman times."), the right "is not absolute and 'does not necessarily prohibit the admission of hearsay statements against a criminal defendant,'" *State v. Madrigal*, 87 Ohio St.3d 378, 385 (2000), quoting *Idaho v. Wright*, 497 U.S. 805, 813 (1990).
>
> {¶ 20} The United States Supreme Court has held that the Confrontation Clause only bars the admission of "testimonial" hearsay statements. *Crawford* at 68. It has further declared that an out-of-court statement is testimonial when "in light of all the circumstances,

10

> viewed objectively, the 'primary purpose' of the conversation [giving rise to the out-of-court statement] was to 'create an out-of-court substitute for trial testimony.'" *Ohio v. Clark*, 135 S.Ct. 2173, 2180 (2015), quoting *Michigan v. Bryant*, 562 U.S. 344, 358 (2011). Regardless, the Court has "explicitly preserved the principle that an accused has forfeited his confrontation right where the accused's own misconduct is responsible for a witness's unavailability." *Hand*, 107 Ohio St.3d 378, 2006–Ohio–18, at ¶ 105, citing *Crawford* at 62 ("The rule of forfeiture by wrongdoing (which we accept) extinguishes confrontation claims on essentially equitable grounds; it does not purport to be alternative means of determining reliability.") and *Reynolds v. United States*, 98 U.S. 145, 158 (1879) (stating that if the witness is unavailable due to the defendant's misconduct then the defendant "is in no condition to assert that his constitutional rights have been violated").
>
> {¶ 21} Here, the trial court based its preliminary determination that the out-of-court statements of R.F. were admissible on its finding that Miller threatened R.F. for the purpose of making him unavailable to testify at trial. As discussed above, we have determined that the trial court did not err in making that finding. As a result, we conclude that Miller forfeited his confrontation right by engaging in this wrongdoing and that the trial court did not err by admitting R.F.'s out-of-court statements into evidence. *See id.* at ¶ 106 (determining that there was no Confrontation Clause violation where the trial court found that the defendant killed the declarant "to eliminate him as a potential witness").
>
> {¶ 22} In sum, the admission of R.F.'s out-of-court statements at trial violated neither Evid.R. 804(B)(6) nor Miller's confrontation right. Accordingly, we overrule Miller's sole assignment of error.

*Id.* at *5-6.

Miller argues that R.F.'s out-of-court statements were not admissible under Ohio Rule of Evidence 804(B)(6). Doc. 13, pp. 16-17. However, Ground 1 in his Amended Petition challenges his alleged constitutional violation of the Confrontation Clause, not a violation of the Ohio Rules of Evidence. Moreover, a challenge to the state court's interpretation of Ohio evidentiary rules is not a basis for obtaining federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *see also Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988) (federal habeas court assumes that the Ohio court's interpretation of Ohio's rules of evidence was correct; a challenge to the Ohio court's ruling based on state law is not cognizable).

In any event, Miller's assertion that the challenged testimony was improperly admitted fails. He attempts to distinguish two cases relied upon by the Ohio Court of Appeals when rejecting Miller's argument that, in order for Rule 804(B)(6) to apply, the defendant must have murdered the victim, rather than threatened the victim. Doc. 13, pp. 16-17 (discussing *State v. Davis*, 2015–Ohio–5159 (Oh. Ct. App. 2015) and *State v. Blackford*, 2014–Ohio–4808 (Oh. Ct. App. 2014)). He states that in *Davis*, the defendant had violated a court order when he contacted the witness hundreds of times via telephone and told her that "she did not want to be in the way when he went to court." 2015-Ohio-5159, at *2. In *Blackford*, the state played a telephone call in which the defendant, "who was emotional and at times yelling, told [the witness] that his life was on the line and that he would beat it if no one went to court," told the witness not to go to court, and told the witness to tell another witness not to go to court. 2014-Ohio-4808, at *3. Miller contends that, unlike in these cases, in his case there were no audio recordings and there was no court order prohibiting him from contacting the witness. Doc. 13, p. 17. But in *United States v. Scott*, another case cited by the Ohio Court of Appeals, there was no court order prohibiting contact and there were no audio recordings. 284 F.3d 758, 764 (7th Cir. 2002) (applying Fed. R. Evid. 804(b)(6), finding that the defendant engaged in wrongdoing based on reports of conversations he had with the witness while in jail).

In sum, the Ohio Court of Appeals applied the correct law to Miller's claim and its decision was not an unreasonable application of Supreme Court precedent or an unreasonable determination of the facts. 28 U.S.C. § 2254(d).

### B. Miller is not entitled to an evidentiary hearing

Miller states that he is entitled to an evidentiary hearing because he has set forth facts that entitle him to relief. Doc. 13, p. 17-18. To be entitled to an evidentiary hearing in a federal habeas case, a petitioner must satisfy the requirements of 28 U.S.C. § 2254(e). Section 2254(e)

12

provides,

> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.
>
> (2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
>
>> (A) the claim relies on—
>>
>>> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>>>
>>> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>>
>> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e). Miller has not identified what portion of 28 U.S.C. § 2254(e) he believes entitles him to relief and no section appears to apply to his case such that would warrant an evidentiary hearing. *See Cullen v. Pinholster*, 563 U.S. 170, 180-181 (2011) (federal habeas court is limited to the evidence that was before the state court); 28 U.S.C. §2254(e)(1) (state court determination of a factual issue is presumed to be correct). Accordingly, his request for a hearing is denied.

13

## IV. Conclusion and Recommendation

For the reasons stated above, the undersigned recommends that Miller's Amended Petition be **denied**. His request for a hearing is **denied**.

Dated: June 21, 2019  */s/ Kathleen B. Burke*
Kathleen B. Burke
United States Magistrate Judge

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); s*ee also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).